UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNETTE GABRIEL,

                Plaintiff,

              -against-

HUDSON VALLEY CREDIT UNION,

                Defendant.

**OPINION AND ORDER**

25-CV-06188 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Annette Gabriel ("Plaintiff") commenced this employment discrimination action on June 27, 2025 in the Supreme Court of the State of New York, Putnam County, against her former employer, Hudson Valley Credit Union ("Defendant" or "HVCU"). (Doc. 1-1, "Compl."). On July 28, 2025, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1446(a), 1441(a). (Doc. 1). Plaintiff brings four claims for relief including: i) gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*; ii) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*; and iii) age and gender discrimination under the New York State Human Rights Law ("NYSHRL").

Pending before the Court is Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 14; Doc. 15, "Def. Br."). Plaintiff opposed Defendant's motion (Doc. 16, "Pl. Br."), and the motion was fully briefed with the filing of the reply (Doc. 17, "Reply").

For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from the Complaint. The Court draws all reasonable inferences in Plaintiff's favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

1

Plaintiff began her employment with Defendant in March of 2024 when she was hired as a member of the Human Resources Department. (Compl. ¶¶ 5, 7, 12). Plaintiff, at the time of her hiring and through her subsequent termination, was a 54-year-old woman. (*Id.* ¶¶ 72, 77). Plaintiff's team consisted of 39 individuals, with five (5) reporting directly to Plaintiff. (*Id.* ¶ 6). Plaintiff, in this role, reported to the Chief Experience Officer, Desiree Wolfe ("Wolfe"), who in turn reported to the Chief Banking Officer, Rick Lionhood ("Lionhood"). (*Id.* ¶ 9). Plaintiff alleges that this structure deviated from the normal reporting structure, under which Plaintiff would have reported to Chief Executive Officer Jonathan Roberts ("Roberts"). (*Id.* ¶ 10).

Plaintiff, on April 22, 2024, had a one-on-one meeting with Lionhood, where Lionhood allegedly told Plaintiff that "she was having a positive impact and cautioned her not to work too hard or . . . move too fast." (*Id.* ¶ 27). Plaintiff, during this meeting, raised concerns about three issues: i) her level of pay in the context of the duties she was directed to perform; ii) the reporting structure not making sense as Plaintiff spent little time with Wolfe; and iii) that Plaintiff should be on the Executive Management Committee ("EMC"). (*Id.* ¶¶ 29-32). Plaintiff, despite the above issues, assured Lionhood that "she liked being at HVCU and had no intention of leaving." (*Id.* ¶ 33). Lionhood thanked Plaintiff for sharing her thoughts, but did not provide any additional feedback. (*Id.* ¶ 35).

Roberts, in or around the week of July 22, 2024, asked how Plaintiff was doing and agreed to meet with her after Plaintiff expressed that there was "a lot going on." (*Id.* ¶¶ 40-41). During this meeting on July 26, 2024, Plaintiff again expressed concern about her pay, specifically noting that her "compensation was not commensurate with the market rate for the work and role," which for "heads of human resources at companies of the same or similar stature and size" Plaintiff alleges was approximately "$350,000+ with bonuses and equity." (*Id.* ¶ 43). Plaintiff alleges that

Roberts responded by saying, "do you have an issue with seeing the pay information of our most senior employees?," to which Plaintiff stated that such knowledge had "absolutely no bearing on her request" for an increase in pay. (*Id.* ¶¶ 46-49). Plaintiff again expressed her belief that she should be on the EMC, and that Defendant's reporting structure "devalued and hindered the Human Resources function." (*Id.* ¶¶ 50-51). Plaintiff assured Roberts, however, that "she had no intention of leaving and wanted to stay and continue to have an impact at HVCU." (*Id.* ¶ 45). At the conclusion of the meeting, Roberts directed Plaintiff to discuss her concerns with Wolfe, which Plaintiff did at the end of July. (*Id.* ¶¶ 57, 62).

Plaintiff, in the July meeting with Wolfe, discussed her compensation concerns and Wolfe informed Plaintiff that she would bring her request up the chain for review. (*Id.* ¶¶ 62-63). Thereafter and during a meeting with Wolfe and Chief Risk Officer Mark Timmerman ("Timmerman") on August 8, 2024, however, Plaintiff was terminated. *(Id.* ¶ 64). Plaintiff alleges that during that meeting Wolfe accused her of taking over the meeting with Roberts to address personal concerns, and accused Plaintiff of pulling a bait-and-switch over compensation she agreed to when she was hired, noting that Plaintiff could not be trusted with confidential information. (*Id.* ¶¶ 65, 68, 70). However, Plaintiff contends that Defendant "failed to disclose the full scope of her duties and responsibilities, requiring senior level HR leadership . . . while paying a rate commensurate with a lower-level HR leader." (*Id.* ¶ 68).

Plaintiff claims that during her time working at HVCU, she received positive feedback, praise for her "collaborative management style," and created a number of "accolades and accomplishments." (*Id.* ¶¶ 36-39). Thus, Plaintiff alleges that Defendant terminated her for two reasons: (1) "because she was a 54-year-old woman with enough experience (i.e., over 30 years) to know that HVCU was purposely undermining the role of the Human Resources Department

through atypical hierarchical reporting structures discriminating against her by refusing her a spot on the EMC," and (2) "because she was a 54-year old woman who refused to tow [sic] the line of the male-driven and dominated hierarchical bureaucracy maintained by HVCU's leadership." (*Id.* ¶¶ 72-73).

Plaintiff alleges that she was replaced by a woman who was approximately ten years her junior (approximately 44 years old), who, upon being hired, was given the title of Chief Human Resources Officer, a title Defendant never held. (*Id.* ¶ 74). Plaintiff alleges that she "suffered adverse employment action[s] because of her sex and because of the male-driven and/or dominated hierarchical structure at HVCU that devalued Plaintiff because of her sex." (*Id.* ¶ 81). Plaintiff additionally argues that "[b]ut for [her] age, Defendant would not have taken the aforementioned adverse employment action" against her. (*Id.* ¶ 88).

This litigation followed.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

I.  Plaintiff's First Claim for Relief – Title VII Gender Discrimination

Plaintiff's first claim for relief is brought pursuant to Title VII for gender discrimination. (Compl. ¶¶ 10-11).

Title VII "makes actionable *any* form of sex-based compensation discrimination." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019) (citing 42 U.S.C. § 2000e-2(a)(1)). Claims under Title VII are subject to the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, at the motion to dismiss stage, only the first step—the plaintiff's burden to allege a *prima facie* case of discrimination—is at issue. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

"To establish a *prima facie* case of discrimination under Title VII . . . a plaintiff must allege that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment decision; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Malloy v. Pompeo*, No. 18-CV-04756,

2020 WL 5603793, at *15 (S.D.N.Y. Sept. 18, 2020). At the motion to dismiss stage, a plaintiff "need only give plausible support to an inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "[T]he plaintiff also may create a 'mosaic' of intentional discrimination by identifying 'bits and pieces' of evidence that together give rise to an inference of discrimination." *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-CV-07408, 2025 WL 863572, at *11 (S.D.N.Y. Mar. 18, 2025).

Defendant challenges only the fourth element, arguing that "[t]here are no factual allegations in the Complaint that create an inference that Plaintiff's termination, role, compensation, or place in the reporting structure had anything to do with her sex." (Def. Br. at 7). The Court agrees.

Plaintiff's chief gender-based allegation is that she was terminated "because she was a 54-year-old woman who refused to tow [sic] the line of the male-driven and dominated hierarchical bureaucracy maintained by [Defendant's] leadership." (Compl. ¶ 73). Plaintiff appears to argue that this "specific mention" of the alleged "male-driven" structure, standing alone, supports the necessary inference of discrimination. (Opp. Br. at 6). However, "[n]aked assertions of . . . discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristics are too conclusory to withstand a motion to dismiss" *Ellis v. New York City Dep't of Educ.*, No. 19-CV-01441, 2020 WL 1166056, at *3 (S.D.N.Y. Mar. 11, 2020) (quoting *Sanders-Peay v. New York City Dep't of Educ.*, No. 14-CV-04534, 2014 WL 6473507, at *8 (E.D.N.Y. Nov. 18, 2014)). Plaintiff's conclusory explanation as to why Defendant terminated her, made without any additional allegations in the Complaint to

6

support such a statement, is exactly that: an insufficient "naked assertion[]" without a causal link.[2]

Indeed, Plaintiff affirmatively pleads that her direct supervisor, Desiree Wolfe, is a woman, and that Plaintiff's alleged replacement is also a woman. (Compl. ¶¶ 9-10, 74). Thus, the ambiguous statement alone, *i.e.*, Plaintiff's alleged refusal to "tow [sic] the line of the male-driven and dominated hierarchical bureaucracy," fails to create a causal link between Plaintiff's gender and termination to withstand Defendant's motion to dismiss.

Additionally, Plaintiff's heavy reliance on the minimal pleading standard, including the blanket assertion that "courts allow claims based on similar, contextual allegations to proceed to discovery where the context suggests discrimination" (Opp. Br. at 7), fares no better. While the plausibility standard may be "forgiving, it is not toothless." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020).

Though it may be true that "showing that the employer treated a similarly situated employee differently is a common and especially effective method of establishing a *prima facie* case of discrimination," *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001), failing to establish "suitable comparators," without more, strikes a fatal blow to a plausible discrimination claim. *Boyar v. Yellen*, No. 21-507, 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022) (discrimination claim failed where plaintiff "alleged no facts showing that the[] [alleged comparators] . . . engaged in similar . . . behaviors at work or had similarly poor performance."); *see also Ashmeade v. Amazon.com*, No. 23-CV-04331, 2026 WL 880645, at *10 (S.D.N.Y. March 31, 2026). Not only does Plaintiff neglect to mention the gender of any of the allegedly "similarly situated" employees, Plaintiff also makes no effort to show that "they were (1) subject to the same performance

---

[2] The Court further notes that Plaintiff does not provide any explanation in the Complaint, or in opposition, as to exactly what refusing to "tow" this "line" entails. The nebulous allegation, on its face, is not a picture of clarity or one from which an inference of discrimination may be found.

evaluation and discipline standards [or] (2) engaged in comparable conduct." *Ruiz v. County of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010); (*see also* Compl. ¶¶ 14 ("[Defendant] paid [Plaintiff] a salary that was substantially lower than the median salary for similarly situated employees at other companies of a similar size"); *id.* ¶ 48 (Plaintiff's basing a pay increase request on the "market rate of pay for heads of human resources at companies of the same or similar stature and size"); *id.* ¶¶ 58-60 (alleging without more detail, that "three [other] employees" and a "significant number of non-HR employees" received salary increases); *id.* ¶ 68 (alleging that Plaintiff was paid a "rate commensurate with a lower level HR leader")). These allegations are simply insufficient to establish the requisite *prima facie* case of discrimination. *See Mohan v. City of New York*, No. 17-CV-03820, 2018 WL 3711821, at *11 (S.D.N.Y. Aug. 3, 2018).[3]

Finally, while Plaintiff suggests that the particulars of her replacement offers context suggesting gender discrimination, the fact that Plaintiff was replaced by another woman in fact cuts against her claim. *See Gonzalez v. Allied Barton Sec. Servs.*, No. 08-CV-09291, 2010 WL 3766964, at *5 (S.D.N.Y. Sep. 7, 2010), *adopted by* 2010 WL 3766954 (S.D.N.Y. Sep. 27, 2010) (explaining that "[b]ecause [plaintiff] was replaced by someone of her same gender, there is no evidence to support an inference of gender discrimination").

While undoubtedly Plaintiff believes within the four corners of her mind that she was discriminated against based on her gender, the plausibility test for an inference of discrimination requires more. Here there is no further fact alleged to support a plausible inference of discrimination.

---

[3] Similarly, Plaintiff's allegations also fail to create a "'mosaic' of intentional discrimination" as there exist no "bits and pieces" of evidence that come remotely close to "nudg[ing] [her] claim . . . beyond mere possibility." *See Mazur v. New York State Dep't of Corr.*, No. 20-CV-00624, 2021 WL 6774997, at *3 (W.D.N.Y. Jan. 20, 2021), *adopted by* 2021 WL 1110583 (W.D.N.Y. Mar. 23, 2021).

As a result, Plaintiff's failure to plead facts linking any of her alleged adverse employment actions in any manner to her gender warrants dismissal of the Title VII gender discrimination claim.

II.    Plaintiff's Second Claim for Relief – Age Discrimination under the ADEA

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination [claim] under the ADEA must plausibly allege that adverse action was taken against her by her employer, and that her age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (citing *Vega*, 801 F.3d at 87). Similar to a Title VII claim, a plaintiff's pleading burden is minimal and they need only "plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality." *Id.* (citing *Littlejohn*, 795 F.3d at 310-11); *see also Canada v. Perkins Coie LLP*, No. 18-CV-11635, 2020 WL 895705, at *1 (S.D.N.Y. Feb. 18, 2020). As to the "but-for" factor, it is well-settled that simply pleading the minimum requirements of discrimination claim, *i.e.*, that the individual was part of the protected class and was then replaced by an individual younger than the 40-year-old threshold, is not enough, without more, to raise the "requisite inference of but-for causation under the ADEA." *See Wallace v. Esper*, No. 18-CV-06525, 2019 WL 4805813, at *7 (S.D.N.Y. Sept. 30, 2019).

Defendant, focusing solely on the "but-for" factor, argues that Plaintiff's allegations, even taken as true, fail to "give rise to an inference of discrimination based on her age." (Def. Br. at 8-10). The Court agrees.

Plaintiff alleges that "at all relevant times herein," she was "in her mid-50s," and specifically, "a 54-year old woman" at the time of her termination. (Compl. ¶¶ 72, 80, 84). Plaintiff is therefore within the scope of protection afforded by the ADEA. *See Zoulas v. New York City*

*Dep't of Educ.*, 400 F. Supp. 3d 25, 53 (S.D.N.Y. 2019) (citing 29 U.S.C. § 631(a) and noting that individuals over 40 are protected by the ADEA). Assuming *arguendo* that Plaintiff has sufficiently pled at least one adverse action, *e.g.*, Plaintiff's termination, Plaintiff has nevertheless failed to plausibly allege facts that permit an inference that Plaintiff was discriminated against or terminated *because of* her age.

Plaintiff principally relies on one factual allegation to support an inference that Plaintiff's age was the "but-for" cause of her termination: upon termination, she was replaced by "an individual approximately 10 years younger and with far less relevant experience." (Compl. ¶ 86). This allegation, without more, is insufficient for the Court to make the requisite minimal inference that Plaintiff's age was a "but-for" cause of her termination. *See Ashmeade*, 2024 WL 4266391, at *14 (S.D.N.Y. Sep. 23, 2024). Being replaced by a person also protected in the age discrimination class is of no value for an age discrimination analysis. Likewise, Plaintiff is unable to point to any other fact to support an inference of age discrimination. For instance, Plaintiff does not include any allegations about comments directed at her that were made by any individuals concerning her age. *See Marcus*, 661 F. App'x at 33 ("Without more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive."); *but see Wallace*, 2019 WL 4805813, at *7 ("ageist comments" in addition to the minimum requirements of a discrimination claim, considered together, were enough to "nudge [plaintiff's] ADEA claim across the line from conceivable to plausible to proceed."). The Court also notes that Plaintiff pleads that "at all relevant times herein" she was 54 years old, including when she was hired by Defendant. That fact "substantially weakens any inference of discrimination on Defendants' part." *Spires v. MetLife Group, Inc.*, No. 18-CV-04464, 2019 WL 4464393, at *8 (S.D.N.Y. Sept. 18, 2019). Moreover, while not dispositive, the fact that Plaintiff's replacement was also a part of the ADEA's

10

protected class (Compl. ¶¶ 74, 86), further weakens any inference of discrimination that may be drawn. *Pustilnik v. Battery Park City Auth.*, No. 18-CV-09446, 2019 WL 6498711, at *5 (S.D.N.Y. Dec. 3, 2019) (dismissing plaintiff's age discrimination claim where her replacement was also within the protected age class); *see also Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023, 2020 WL 2836760, at *8 (S.D.N.Y. May 31, 2020).

Plaintiff nevertheless maintains, despite the above and without citation to any case law, that "courts allow claims to proceed when the facts permit a plausible inference that age played a determinative role," repeatedly emphasizing the "relatively low bar" at the motion to dismiss stage and the requirement of only "minimal support." (Pl. Br. at 5, 8).[4] However, despite the nominal pleading standard, the facts still must at the very least permit such a "plausible inference." *See Johnson v. Andy Frain Services, Inc.*, 638 F. App'x 68, 70-71 (2d Cir. 2016). The facts here, taken from the Complaint and viewed in a light most favorable to Plaintiff, plainly do not permit such an inference. Despite Plaintiff's page-long recitation of allegations from the Complaint,[5] the only fact that remotely touches on a protected category is the following conclusory line, made without any additional support: "(xii) replacement with a younger person with less experience, who was given the CHRO title denied to Plaintiff." (Pl. Br. at 6-7). Plaintiff's allegations, unsupported by a single non-conclusory example of how younger employees were favored, or what, if any, comments were made specifically concerning Plaintiff's age, are not sufficient to allow the inference that Plaintiff was discriminated against "because of" her age. *See Johnson*, 638 F. App'x

---

[4] Plaintiff, in her opposition, cites no case law to support her position that courts allow claims like the one pled here to proceed. The single citation in her opposition (Pl. Br. at 7) is simply a reference to a case cited by Defendant concerning the "but-for" standard in ADEA cases.

[5] Plaintiff provides a laundry list of allegations from the Complaint (Pl. Br. at 6-7), without explaining their connection to any of the claims or providing argument as to the relevance of such statements, leaving the Court to guess at their alleged significance.

11

at 71. The "younger person" to whom Plaintiff refers was 44 at the time of her hire. Here too, no fact supports an inference of age discrimination.

Accordingly, Plaintiff's ADEA claim must be dismissed.

III. Plaintiff's Remaining State Law Claims

Plaintiff also asserts state law claims of gender and age discrimination under the NYSHRL. "A federal district court may decline to exercise supplemental jurisdiction over pendent state law claims when it 'has dismissed all claims over which it has original jurisdiction.'" *Offor v. Mercy Med. Ctr.*, No. 17-CV-01872, 2018 WL 2947971, at *7 (S.D.N.Y. May 31, 2018) (quoting 28 U.S.C. § 1367(c)(3)). Having dismissed all of Plaintiff's claims over which the Court has original jurisdiction, the Court declines to exercise jurisdiction over Plaintiff's state law claims. *See, e.g.*, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 n.6 (2d Cir. 2017) ("Of course, a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction.").

## **CONCLUSION**

Defendant's motion to dismiss is GRANTED and the Complaint is dismissed. Plaintiff's Title VII and ADEA claims are dismissed with prejudice. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, they are dismissed without prejudice.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 17 and close this case.

**SO ORDERED.**

Dated:   White Plains, New York
             June 3, 2026

PHILIP M. HALPERN
United States District Judge

12